## Case No. 16,387.

UNITED STATES v. STERLAND.

[3 Quart. Law J. 244; 6 Pittsb. Leg. J. 50.]

District Court, W. D. Virginia.   July, 1858.

### EVIDENCE—DECEASED WITNESS.

1. In a prosecution against a postmaster, evidence having been given that the office was suspected on account of the disappearance of mail matter which led to investigation, and ultimately to the prosecution, it is competent for the defendant to repel the presumption arising from this testimony, by showing that miscarriages of the mails, sent through the same office continued after his removal from the office.

2. The rule that the testimony of a deceased witness may be given in evidence on a second trial between the same parties does not apply to a criminal cause. Such evidence is inadmissible to support either the prosecution or defence.

At October term, 1856, James Sterland was indicted for stealing a letter and its contents from the post office at Wytheville, Va., he being a clerk employed in said office. He was put upon trial at that term, but the jury failed to agree. He was again tried, with the like result, at May term, 1857; and now was put upon trial before a third jury, at this term.

It was proved that the prisoner was a clerk in the post office at Wytheville, and entrusted with the management of the mails at that place. A mail agent who was the principal witness for the prosecution, testified that in 1856 the post office at Wytheville had fallen under suspicion owing to irregularities, and disappearances of mail matter, which seemed to be attributable to that office. He had therefore investigated the matter and his investigation had resulted in this prosecution.

After the case for the United States was closed, the prisoner called a witness, James H. Myers, and stated that his purpose was to prove by this and other witnesses that after the 29th day of October, 1856, (when the prisoner was arrested and imprisoned,) divers letters containing money and valuables, which had been mailed at Wytheville, had never reached their destination; and that he was in jail from October, 1856, till the latter part of May, 1857, when he was admitted to bail. Objection was made to the admission of this testimony, and counsel were heard on the question.

F. B. Miller, U. S. Atty.

Floyd, Wysor & Cook, for prisoner.

BROCKENBROUGH, District Judge. Evidence has been given that prior to the commencement of this prosecution this post office had fallen under the suspicions of the department in consequence of delinquencies in the transmission of the mails, for which this office was believed to be responsible; and that these suspicions were the motives leading to the action and investigation which terminated in this prosecution; and it is also shown that the defendant was a clerk in this office, and of course exposed to these suspicions. This testimony was not necessary to support the prosecution. The facts might have been detailed without any statement of the suspicions which put the agents of government in motion. But that evidence is before the jury and the prisoner is exposed to its influence against him. Whatever may be the weight of the testimony —be its effect much or little—he must suffer something from its operation. It therefore seems pertinent to rebut the effect of this evidence. To do this the prisoner offers to show that after he was arrested and imprisoned, and therefore relieved from all suspicion on account of subsequent delinquencies, there were still irregularities and miscarriages in this office. I think this is relevant and proper testimony. He is to be affected by evidence of delinquencies occurring while he was in the office. I think he ought to be allowed to show that after his connection with the office had terminated and he was in such a situation as to render it impossible to suspect him, the delinquencies continued to occur. I must admit the evidence for what it is worth.

In the further progress of the case the prisoner proved that Eli Rider was examined as a witness in his behalf on the trial at May term, 1857, and that Rider had since died. He then called a witness who said that he heard Rider's evidence and could detail it; and the prisoner then proposed to offer Rider's statements in evidence. This was objected to on the ground that in a criminal trial, proof of the testimony given by a deceased witness on a former trial is not admissible. For the general rule on the subject the prisoner's counsel referred to 1 Greenl. Ev. §§ 163–166, and to Strutt v. Bovingdon, 5 Esp. 56. On the other side, Finn v. Com., 5 Rand. [Va.] 701, was relied on.

BROCKENBROUGH, District Judge. There is no question as to the rule that in a civil action either party may give in evidence the facts deposed to by a deceased person who has testified upon a former trial. But I do not find that this course has ever been allowed in a criminal trial. On the other hand, Finn's Case is a direct authority against the admission of such evidence. It is true that in that case the testimony was offered against the prisoner, and the court held that it was the right of the accused to be confronted with his accuser and the witnesses. But if such evidence cannot be used against him, is it not a corollary from the decision that it may not be used in his favor? To me it seems that it is. But the defendant's counsel contend that Finn's Case is not binding upon this question, because upon the point now in dispute that decision was a mere obiter dictum. It is true that in Finn's Case the witness whose former testimony was offered against the prisoner was not dead; but he had left the commonwealth—was beyond the jurisdiction of the court, and for all the practical purposes of the prosecution was in the same condition as if dead. If it had been a civil action, proof of his statements on the former trial would have been admissible. The question therefore in that case was not precisely identical with the one at the bar; but the court considered the subject in both aspects, and decided that the absent witness could only be regarded as a dead man; or rather they decided that, even if he were dead, his statements would not be heard, and still less could they be admitted on the ground of his absence from the jurisdiction. I cannot say that I approve the rule as it is established. I can easily preceive the great oppression and hardship under which a man might suffer by reason of the death of his witness. It does seem that it is casting upon him an injury resulting from the act of God; and the remarks of Lord Ellenborough, in Strutt v. Bovingdon, are very apposite, that this is not the loose asseveration of an irresponsible person, but his statement under the sanction of an oath, and it comes in that sacramental form in which alone is evidence to be heard. But I have no alternative, and am constrained to hold that this evidence is not admissible.

The prisoner was found guilty and sentenced to ten years' imprisonment in the penitentiary of the United States.